# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BANK OF THE WEST, a California banking corporation, | Case No. 2:11-cv-02037-GMN -VCF |
| Plaintiff, | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDED DEFAULT JUDGMENT** |
| v. | |
| DAY STAR VENTURES, L.L.C., a Nevada limited liability company; NEVADA HOMES GROUP, INC.; PAUL A. WAGNER; and MONICA WAGNER, | |
| Defendants. | |

This matter having come before the Court on November 8, 2012, before Magistrate Judge Ferenbach on the Ex Parte Application for Entry of Default Judgment (#15) filed on June 20, 2012, by Plaintiff, Bank of the West ("BOTW" or "Bank"), against Day Star Ventures, L.L.C., Nevada Homes Group, Inc., Paul A. Wagner, and Monica Wagner ("Defendants"); the Court having examined the pleadings; the Court having heard testimony from Plaintiff's witness, Daniel K. Gorham (#19); and good cause appearing therefor, the Court does hereby make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

On October 6, 2004, Day Star Ventures, L.L.C. ("Borrower") executed and delivered to Commercial Federal Bank, predecessor in interest to Bank, a Promissory Note in the amount of $1,138,000 (the "Hualapai Loan"). (#1 and #21). Later that year, on December 29, 2004, Commercial Federal Bank agreed to another loan, and Borrower executed and delivered to Commercial Federal Bank a Promissory Note in the amount of $292,000 (the "Lake Mead Loan") (collectively, the "Loans" and the "Notes"). *Id.* The obligations of Borrower were secured by, among other things, Deeds of Trust Assignment of Rents and Security Agreement (the "Deeds of Trust"), encumbering two parcels of real property located in Las Vegas, Nevada (hereinafter, the "Hualapai Property" and "Lake Mead Property", respectively) with respect to

each Loan.  *Id.*  Each Loan was further secured by a Continuing Guaranty, executed by Nevada Homes Group, Inc., Paul A. Wagner, and Monica Wagner (collectively, the "Guarantors"), and delivered to Commercial Federal Bank (the "Guaranties") by Guarantors under which Guarantors guaranteed repayment of the full amount of each Loan.  *Id.*

On December 5, 2005, the Bank acquired Commercial Federal Bank via a stock transfer and as a result became the successor in interest to the Loans, Notes, Deeds of Trust, Guaranties and all of the other documents evidencing, securing, guarantying or otherwise relating to the Loans.  *Id.*

For approximately the next five years, the Bank, Borrower, and Guarantors executed a series of modification agreements extending the maturity dates of the Notes.  *Id.*  Finally, on July 7, 2009, the Bank, Borrower and Guarantors entered into a Loan Modification And Renewal Agreement and Amended And Restated Promissory Note ("Amended Notes") regarding both Loans, which, among other things, extended the maturity date of the Hualapai Note to November 5, 2010, and the Lake Mead Note to January 5, 2011.  *Id.*

By the time the Hualapai Note matured on November 5, 2010, Borrower defaulted on its obligations under the Hualapai Note by failing to pay the outstanding principal balance, plus accrued interest, and by failing to provide the Bank with certain financial documents required by the Change In Terms Agreement dated December 17, 2007.  *Id.*

By the time the Lake Mead Note matured on January 5, 2011, Borrower defaulted on its obligations by failing to pay the outstanding principal balance, plus accrued interest, and by failing to provide the Bank with certain financial documents required by the Change In Terms Agreement dated January 23, 2008.  *Id.*

On August 29, 2011, the Hualapai Property was sold at a non-judicial foreclosure Trustee's Sale to the Bank for a credit bid in the amount of $463,000.00 in partial satisfaction of the indebtedness secured by the Hualapai Deed of Trust.  *Id.*  On the same date, the Lake Mead Property was sold at a non-judicial foreclosure Trustee's Sale to the Bank for a credit bid of $180,000.00 in partial satisfaction of the indebtedness secured by the Lake Mead Deed of Trust.  *Id.*  The Trustee's Deed Upon Sale for both the Hualapai Property and the Lake Mead

Property were recorded on September 22, 2011, with the Clark County Recorder's Office. *Id.*

On the date of the Trustee's Sales, the amount of the indebtedness remaining unpaid on the Hualapai Note and the Lake Mead Note was as follows:

|  | Hualapai Note | Lake Mead Note |
|---|---|---|
| Principal Balance | $1,166,484 | $292,672 |
| Accrued interest | 82,008 | 22,169 |
| Fees | 10,833 | 11,244 |
| **Total:** | **$1,259,325** | **$326,085** |

The Bank has procured an appraisal that provides that on or about the date of the Trustee's Sale, the fair market value of the Hualapai Property was $515,000.00. (#19).

The Bank has procured an appraisal that provides that on or about the date of the Trustee's Sale, the fair market value of the Lake Mead Property was $200,000.00. *Id.*

## CONCLUSIONS OF LAW

Based upon these Findings of Fact and the pleadings on file herein, the Court concludes as follows:

1.      The Court has jurisdiction over the subject matter of and parties to this litigation under 28 U.S.C. § 1331.

2.      Beginning on October 6, 2004, and as modified thereafter, the Bank's predecessor in interest entered into valid and enforceable contracts with the Borrower and the Guarantors, including, but not limited to, the Hualapai Loan, the Hualapai Note, the Hualapai Deed of Trust, and the Continuing Guaranty.

3.      Beginning on December 29, 2004, and as modified thereafter, the Bank's predecessor in interest entered into valid and enforceable contracts with the Borrower and the Guarantors, including, but not limited to, the Lake Mead Loan, the Lake Mead Note, and Lake Mead Deed of Trust, and the Continuing Guaranty.

4.      By acquiring Commercial Federal Bank on or about December 5, 2005, the Bank became the successor in interest to Commercial Federal Bank and assumed all of the

3

1    rights and liabilities of Commercial Federal Bank relating to the Loans.

2        5.      The Borrower and the Guarantors have breached the contracts relating to the

3    Loans in that they have failed to pay the owing balance on the Loans when the Notes matured.

4        6.      The Bank has performed all of its obligations under the Loans and related

5    documents.

6        7.      The Court accepts the fair market value of the respective properties as set forth

7    in the referenced appraisals pursuant to NRS 40.457.

8        8.      The Summons and Complaint were regularly served upon each of the

9    defendants in this matter.  (#4, #5, #10, #11, and #12).

10       9.      Defendants have failed to plead or otherwise defend in this action as required by

11   the Summons and as provided by the Federal Rules of Civil Procedure.

12       10.     Default has been entered against all defendants in this matter (#14), and plaintiff

13   has had no contact with the defendants since the entry of default.

14       11.     There exists a deficiency in this matter pursuant to NRS 40.459 in that the

15   amount of the indebtedness, as defined by NRS 40.451, exceeds the greater of the fair market

16   value of the subject properties sold at the time of the non-judicial foreclosure sale or the

17   amount for which the subject properties were actually sold.

18       12.     The Bank is entitled to a deficiency judgment as a matter of law against the

19   Borrower.

20       13.     The Bank has also suffered damages in an amount commensurate with the

21   amount of the deficiency judgment as a result of the Guarantors' breach of the Guaranties, and

22   is therefore entitled to a judgment as a matter of law against the Guarantors.

23       14.     The type and amount of costs set forth in the Bill of Costs are appropriate.

24       15.     The Bank is entitled to an award of attorney's fees pursuant to the terms of the

25   Notes and the Guaranties.

26   …

27   …

28   …

4

**REDUCTION OF DEFAULT INTEREST**

BOTW seeks $91,551.98 in default interest on the unpaid balance of the Hualapai Loan and $15,501.44 in default interest on the unpaid balance of the Lake Mead Loan. Interest was accrued at the rate of 11% from the date of the non-judicial foreclosure sale, August 29, 2011, through the date of the last hearing held in this action, November 8, 2012. Leading up to the foreclosure sale, BOTW claims $82,008.00 in accrued interest on the Hualapai Loan and $22,169.00 interest on the Lake Mead Loan. Much of that interest was also calculated at the default rate.

The undersigned Magistrate Judge recommends reducing the post-foreclosure accrued default interest on the Hualapai Loan by approximately half, to $46,000.00, and similarly reducing the post-foreclosure accrued default interest on the Lake Mead Loan to $8,000.00. This recommendation is based on the following:

1. The complaint was filed in this action on December 19, 2012 (#1);

2. The interest that will accrue on this Federal Court Judgment, once it is entered will be approximately 0.2% as compared to the default interest rate of 11%;

3. Delay in the resolution of this matter was partly due to the congestion of this court's calendar but also due to the fact that Plaintiff's original proposed default judgment (#15) totaled more than $1,750,000 (as compared to $998,168.31 established by the findings herein), giving no credit for the amount bid at the foreclosure sale or the fair market value of the properties at issue. Defendant should not be unduly prejudiced and BOTW should not unduly benefit from the delay. This reduction still provides BOTW with approximately six months of default interest after the filing of the complaint, in addition to the four months which accrued after the foreclosure sale and before the deficiency action was commended.

**DEFAULT JUDGMENT**

Based upon the Findings of Fact and Conclusions of Law, default judgment is hereby recommended in favor of Plaintiff, Bank of the West, and against Defendants, jointly and severally, as follows:

1.      Compensatory damages in the amount of $870,410.00.

This amount is calculated as follows:  The total indebtedness owed under the Hualapai Loan as of the date of the non-judicial foreclosure sale ($1,259,325) minus the fair market value of the Hualapai Property as of the date of the non-judicial foreclosure sale ($515,000), equals a deficiency of $744,325.  The total indebtedness owed under the Lake Mead Loan as of the date of the non-judicial foreclosure sale ($326,085) minus the fair market value of the Lake Mead Property as of the date of the non-judicial foreclosure sale ($200,000), equals a deficiency of $126,028.  The sum of the two deficiencies is $870,410.00.

2.      Accrued default interest on the unpaid balance of the Hualapai Loan in the amount of $91,551.98, reduced to $46,000.00 for the reasons stated above.

This amount is calculated by accruing simple default interest on the amount of the deficiency of the Hualapai Loan ($744,325) from the date of the non-judicial foreclosure sale, August 29, 2011, through the date of the above-referenced hearing, November 8, 2012 (#19). The default interest rate is the Bank's Alternate Base Rate, as defined in the Notes, plus 5.00% per annum.

3.      Accrued default interest on the unpaid balance of the Lake Mead Loan in the amount of $15,501.44, reduced to $8,000.00 for the reasons stated above.

This amount is calculated by accruing simple default interest on the amount of the deficiency of the Lake Mead Loan ($126,028) from the date of the non-judicial foreclosure sale, August 29, 2011, through the date of the above-referenced hearing, November 8, 2012. The default interest rate is the Bank's Alternate Base Rate, as defined in the Notes, plus 5.00% per annum.

4.      Costs in the amount of $6,700.89.

5.      Attorney's fees in the amount of $14,004.00.

6.      Interest pursuant to 28 U.S.C. §1961 will accrue on the judgment as recommended (attached as Exhibit 1) from the date of entry until satisfied.  The judgment as entered will consist of the compensatory damages ($870,410.00), the reduced default interest on the unpaid balance of the Hualapai Loan ($46,000.00), the reduced default interest on the

1    unpaid balance of the Lake Mead Loan ($8,000.00), costs ($6,700.89), and attorney's fees

2    ($14,004.00), for a total amount of the judgment as entered of $945,114.89.

3          DATED this 20th day of December, 2012.

4

5                                    _____
                                     CAM FERENBACH
6                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28